FILED

JUL 15 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ________________
DEPUTY CLERK

Donna: Mortel
**Care of:** 1308 East Common Street suite #205
New Braunfels, Texas [78130]
***non-domestic without*** the United States
Email: donnamortel8560@gmail.com

***Plaintiff, Real Party In Interest, Secured Party, Injured Party***

SA25CA0817 XR

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS

**Donna: Mortel,**
*Plaintiff/Injured Party,*
*vs.*
**George Nowicki, Scott McClung,**
*Defendants.*

Case No.

**VERIFIED COMPLAINT FOR:**

1. **BREACH OF CONTRACT**
2. **CONSTRUCTIVE FRAUD AND FRAUDULENT INDUCEMENT**
3. **BREACH OF THE IMPLIED WARRANTY OF HABITABILITY**
4. **CONSTRUCTIVE EVICTION**
5. **RETALIATION IN VIOLATION OF TENANT RIGHTS**
6. **VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA)**
7. **NEGLIGENCE / GROSS NEGLIGENCE**
8. **UNJUST ENRICHMENT (OPTIONAL BUT STRATEGIC)**
9. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
10. **DECLARATORY AND INJUNCTIVE RELIEF**

(SPECIAL LIMITED APPEARANCE — IN EQUITY ONLY — EQUITY JURISDICTION PRESERVED)

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

This matter is brought in **equity**, under the original and exclusive jurisdiction of this Court as authorized by the Constitution of the United States, Article III, Section 2. All statutory jurisdiction is expressly denied and rebutted. This is a

Court of Record. All rights are reserved without prejudice pursuant to UCC 1-308.

**COMES NOW** Donna: Mortel, in her full private capacity as an American woman and **Plaintiff, Real Party in Interest**, and **Injured Party**, proceeding sui juris, **in propria persona**, and **not pro se,** by ***Special Limited Appearance*** **only,** not as a corporate entity, surety, vessel, trust, transmitting utility, "resident," or U.S. citizen under the 14th Amendment. No joinder, merger, or assumption of liability is acknowledged, and all agency is denied unless explicitly granted. **Plaintiff, Real Party in Interest**, and **Injured Party** invokes the **Court's equitable jurisdiction** to adjudicate all claims according to **truth**, **fact**, and **applicable law**, and hereby files this VERIFIED COMPLAINT FOR BREACH OF CONTRACT, FRAUDULENT INDUCEMENT, HABITABILITY VIOLATIONS, CONSTRUCTIVE EVICTION, RETALIATION, DECEPTIVE TRADE PRACTICES, NEGLIGENCE, UNJUST ENRICHMENT, EMOTIONAL DISTRESS, AND DECLARATORY & INJUNCTIVE RELIEF IN LAW AND EQUITY against George Nowicki and Scott McClung, out-of-state landlords operating within the State of Texas *without* compliance to their obligations and duties under law.

## I. INTRODUCTION

1.Plaintiff Donna Mortel ("Plaintiff") brings this Verified Complaint against George Nowicki and Scott McClung (collectively, "Defendants"), out-of-state landlords who, while operating as residential property owners leasing property in Texas, have knowingly and willfully committed violations of federal and state law, including but not limited to: fraudulent inducement, constructive fraud, breach of contract, habitability violations under the Texas Property Code, retaliatory threats of eviction, and malicious bad faith in the formation and

performance of a residential lease agreement concerning the property located at 509 Chapel Bend, New Braunfels, Texas 78130.

2.Defendants' conduct caused Plaintiff/Injured Party and her minor children to suffer serious financial, emotional, and legal injuries, including loss of income, emotional distress, reputational harm, housing insecurity, and retaliatory threats of displacement after Plaintiff/Injured Party lawfully asserted her rights and documented uninhabitable and dangerous conditions in the home.

3.Plaintiff now seeks:

- **Declaratory relief** establishing the enforceability of her lawful claims, obligations, and settlement offers;
- **Injunctive relief** protecting against retaliatory eviction and deprivation of due process;
- **Compensatory and statutory damages** for breach of habitability, fraud, and related torts;
- **Treble damages** under applicable Texas and federal law for intentional and retaliatory conduct;
- **Costs, interest, and attorneys' fees** where authorized by law or equity;
- And any other relief deemed just and proper in law, equity, or commerce.

4.This action arises under federal law, including **42 U.S.C. § 3617 (Fair Housing retaliation)**, **28 U.S.C. § 1332(a)** (diversity jurisdiction), and Texas statutory and common law governing residential tenancy, fraud, and equitable remedies.

## II. PARTIES

5.**Plaintiff and Injured Party, Donna Mortel,** is a natural woman and private American residing in Comal County, Texas, and at all relevant times was in lawful possession of the residential property located at 509 Chapel Bend, New Braunfels, Texas, under a private lease agreement. Plaintiff was and remains in a

**tenant relationship** with Defendants for the limited purpose of asserting her lawful rights under the lease and Texas Property Code. She is the Real Party in Interest, proceeding *sui juris, in propria persona,* and in her private capacity, asserting verified claims arising under contract, tort, and equity. Plaintiff is not a corporate entity, federal employee, 14th Amendment "U.S. citizen," or public official, but is domiciled in the State of Texas solely for the purpose of establishing diversity of citizenship under 28 U.S.C. § 1332(a)(1). No waiver or concession of Plaintiff's private, non-domestic, non-citizen national status is implied, expressed, or granted by this jurisdictional acknowledgment.

6.**Defendant George Nowicki** is a natural man and private American believed to be domiciled in the State of California, and is a citizen of California for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Upon information and belief, Nowicki holds legal or equitable title to the subject property or beneficial interest therein. At all times relevant, he acted in his private capacity as a landlord and principal party to the lease, directing decisions, communications, and conduct toward Plaintiff in Texas.

7.**Defendant Scott McClung** is a natural man and private American believed to be domiciled in the State of California, and is a citizen of California for purposes of diversity jurisdiction. McClung acted in his private capacity as landlord, property manager, and co-owner, exercising direct control over the tenancy, lease negotiations, property access, and all decision-making relevant to the claims asserted.

8.**Defendants George Nowicki and Scott McClung are being sued in their individual and private capacities, and as landlords who directly negotiated, contracted, and exercised control over the subject lease and property.** At all relevant times, Defendants acted in their personal roles, and no third-party entity was identified as the lessor, owner, or liable party under the contract.

Accordingly, they are personally liable under Texas law and equity for all breaches, torts, and statutory violations alleged herein.

9.At all times, **Defendants acted jointly and in concert**, in their **individual and private capacities** as landlords, without disclosing any third-party corporate entity, trust, or management company as the party-in-interest to the lease. No fictitious name, LLC, or agent was designated as the true contracting party in the lease agreement. Accordingly, **Defendants Nowicki and McClung are personally liable** under Texas law for all contractual, statutory, and equitable obligations arising from the lease and their conduct.

## III. JURISDICTION AND VENUE

10.This Court has subject matter jurisdiction pursuant to **28 U.S.C. § 1332(a)(1)**, as the amount in controversy exceeds **$75,000**, exclusive of interest and costs, and the dispute is between citizens of different States. Plaintiff is a domiciliary of the state of Texas, and Defendants are domiciled in the State of California. **Complete diversity of citizenship exists.**

11.**This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over all state law claims asserted herein, as they form part of the same case or controversy under Article III of the United States Constitution.** Plaintiff's federal claims under the Fair Housing Act (42 U.S.C. § 3617) and other applicable civil rights statutes arise from the same nucleus of operative facts as her related Texas state law claims, including breach of contract, breach of the implied warranty of habitability, retaliatory eviction, and tortious infliction of emotional distress. All claims derive from a common set of events—namely, Defendants' joint misconduct in leasing, misrepresenting, and managing the subject residential premises—and involve overlapping evidence, legal theories, and witnesses. As such, the state and federal claims are so closely interrelated

that they form one indivisible action, properly heard in this Court under its supplemental jurisdiction authority.

12. **Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2),** because a substantial part of the acts, omissions, injuries, and contractual breaches giving rise to the claims occurred within this District. Specifically, the residential lease contract agreement was executed and performed in this District; the subject property is physically located within Comal County, Texas; and the material violations of Texas Property Code §§ 92.052, 92.056, and 92.331, along with the retaliatory conduct, constructive fraud, and constructive eviction, all occurred at the leased premises within this forum. Moreover, Defendants purposefully directed their business activities—including lease negotiations, delivery of possession, communications, and alleged retaliatory acts—toward this District while engaging in commercial transactions with the Plaintiff. Accordingly, this District has a direct and substantial connection to the operative facts and subject matter of this action.

13. **Personal jurisdiction over Defendants is proper** because they purposefully availed themselves of the privileges, protections, and obligations of Texas law by entering into a commercial lease agreement involving real property located within the State of Texas, and by directing their conduct—including representations, omissions, breaches, and retaliatory acts—toward a natural woman domiciled in Texas. Defendants' actions created substantial legal and equitable consequences within Texas and gave rise to the claims asserted herein. Their purposeful engagement in business affecting property and parties within Texas establishes clear minimum contacts sufficient to satisfy constitutional due process and statutory requirements for personal jurisdiction in this Court.

## IV. FACTUAL ALLEGATIONS

14.**Plaintiff has acted at all times in honor, good faith, and private capacity.** She did not seek confrontation, litigation, or public adjudication. Instead, she lawfully served Defendants with a Verified Affidavit and Commercial Offer to Cure, offering peaceful resolution and remedy without court intervention.

15.Plaintiff affirms under penalty of perjury that no adult male resides at the premises. The claim that 'her husband resides with her' is entirely false and based on **speculative or mistaken assumptions**. Any individuals observed on-site during the move-in period were present solely to assist with lawful relocation and logistics, including over the July 4th holiday and a family birthday (July 3rd). This accusation is baseless, retaliatory, and misleading, and demonstrates further coercive pressure to justify wrongful eviction.

16.Plaintiff applied for tenancy under her commonly used and lawful name, Donna Mortel, which is legally sufficient and consistent with all previous housing, employment, and financial dealings. There was no concealment, misrepresentation, or fraudulent intent. The claim that her application would have been denied if a different name had been used is both discriminatory and irrelevant. Plaintiff's identification was verified, her payments have been timely, and her tenancy is lawful in all respects.

17.**Defendants' refusal to respond, failure to cure material habitability breaches, and subsequent threats of eviction and coercive conduct left Plaintiff no lawful alternative but to seek the protective jurisdiction of this Court.** The record establishes that Defendants defaulted in honor, engaged in retaliation, and weaponized their position in bad faith.

18.This action is therefore **not** voluntary but compelled by necessity. **Plaintiff reserves all equitable rights and proceeds solely to preserve possession,**

**prevent irreparable harm, and enforce unwaivable statutory protections under Texas law and federal housing policy.**

19.On or about July 1, 2025, Plaintiff took possession of the premises pursuant to a residential lease contract agreement entered into in good faith, relying on the express and implied representations by Defendants that the property was habitable, clean, and move-in ready.

20.Within the first 12 to 24 hours of taking lawful possession of the Premises on July 1, 2025, Plaintiff encountered and documented **substantial, material defects that render the property unsafe, unsanitary, and unfit for residential habitation**. These conditions, undisclosed at the time of leasing, **constitute egregious violations of the implied warranty of habitability and quiet enjoyment under Texas law and amount to constructive breach and constructive eviction.** These facts are **verified** and supported by photographs, written communications, and contemporaneous notes. The following list is representative, not exhaustive:

- Entire home was delivered uncleaned, despite express representations that it was "move-in ready." Plaintiff was forced to deep-clean immediately upon arrival.
- Toilet seats in all bathrooms were stained brown with human waste and urine; they were only replaced after complaint.
- A broken kitchen drawer, which has exposed nails fell and struck Plaintiff's foot within hours of arrival, causing bruising and physical injury.
- The central air conditioning unit was non-functional at the time of move-in and required urgent repair amid high Texas summer temperatures.
- Two of three garage doors were inoperable. Repairs were made to the doors, but only one functioning garage remote was provided.

- One garage remains fully obstructed due to 10–15 large concrete cinder blocks left by prior occupants, posing a safety hazard.
- Microwave is completely unusable—the door will not open, rendering the appliance non-functional.
- No working doorbell is present. A leftover Ring camera remains tied to a third-party account, making it inaccessible and creating a security risk.
- Main bathroom sink stopper is disconnected and the bathtub does not drain properly, impairing basic hygiene.
- Master closet door is misaligned and will not close or function as intended.
- At least 98 visible holes were counted in interior walls—approximately 63 upstairs and 35 downstairs—including a large gaping hole in the lower hallway near the bathroom.
- A towel hook in the master bathroom pulled out of the wall the first time it was used, exposing stripped mounting hardware.
- Downstairs bathroom lacks a toilet paper holder; only two raw holes remain in the wall.
- Light bulbs are missing or burned out in both upstairs and master bathrooms.
- A rusted, abandoned two-person bench sits in the backyard, creating both a safety risk and unsightly view.
- Left-side backyard fence is visibly deteriorating and structurally unstable. A temporary panel was inserted but the underlying defect persists.
- Handyman assigned by Defendants brings a young child with him to the property, compromising Plaintiff's privacy and introducing avoidable distractions and risks.

- There were ants throughout the entire kitchen and the Defendants required Plaintiff to pay for basic pest control out of pocket.

21.**Failure to Rebut or Deny Verified Claims:** All habitability defects outlined above were contemporaneously documented and expressly presented to Defendants, both verbally and in writing. Not only have Defendants failed to deny any of the specific factual claims made by Plaintiff, but many of the repair issues—such as inoperable garage doors, broken microwave, plumbing problems, unclean bathrooms, and missing safety features—have been acknowledged and partially addressed by Defendants and their hired handyman, thereby confirming their existence. Furthermore, **Defendants have not issued any formal rebuttal, denial, or correction to the sworn factual statements contained in Exhibit A**, the Verified Affidavit served on July 11, 2025. By their silence, failure to rebut, and partial confirmation through action, **Defendants have tacitly admitted the material facts stated by Plaintiff, and stand in dishonor and commercial default by operation of law.**

22. **Plaintiff's Good Faith and Defendants' Refusal to Engage:** At all times relevant, Plaintiff/Injured Party has acted **equitably** in **good faith** and has made **multiple attempts** to resolve the matter **privately and without court intervention**, including the issuance of a sworn **Verified Affidavit and Commercial Offer** on July 11, 2025 (Exhibit A). This Affidavit clearly stated Plaintiff's willingness to resolve the dispute equitably and included specific terms for repair, compensation, and rent adjustment.

23. Plaintiff even emailed Defendants indicating intent to resolve this in good faith.

24. In response, Defendants **did not provide any written rebuttal, counter-offer, or negotiation attempt**. Instead, their only communication was a

retaliatory message stating, "You can leave," coupled with threats of eviction and false allegations of fraud.

25. At no point have Defendants offered Plaintiff any **alternative resolution, rent concession, or good-faith engagement**, despite receiving a detailed affidavit documenting material breaches and verifiable damages. Their refusal to participate in any meaningful resolution—while retaining Plaintiff's full July rent and $2,500 security deposit—constitutes **bad faith**, willful dishonor, and further supports Plaintiff's claims for **equitable and legal relief**.

26.**Impact of Defects and Resulting Breach:** Due to the extent and severity of these defects, Plaintiff was unable to unpack, settle, or establish a safe and functional home for herself and her minor children. These conditions materially frustrated the purpose of the lease agreement and constitute:

- **Material breach** of the lease contract;
- **Constructive eviction** by omission and neglect;
- **Violation of Texas Property Code §§ 92.052, 92.056, and 92.0563;**
- **Negligent infliction of emotional distress** and economic damages;
- **Bad faith and retaliatory conduct** under Texas Property Code §§ 92.331–92.334.

27.**Verified Affidavit and Commercial Offer Ignored:** On July 11, 2025, Plaintiff served Defendants with a **VERIFIED AFFIDAVIT REBUTTING FRAUDULENT CLAIMS AND NOTICE OF RETALIATION, BAD FAITH, DISHONOR, AND DEFAULT**, which included a **lawful commercial offer** to resolve the matter without litigation (**See Exhibit A**). That offer proposed:

- Rent abatement for the months of August–October 2025;
- Full repair of all material defects;
- Continuation of lease through June 2026;

- Waiver of Plaintiff's total damage claim of $132,250.

28. **Defendants failed to respond to the affidavit within the 72-hour window** provided. Their failure to rebut constitutes **dishonor, commercial default, and acceptance of liability** by operation of law under UCC §§ 1-308, 3-505, and Texas Business & Commerce Code §§ 2.204–2.206.

29. **Retaliation Instead of Remedy or Counter-Offer in good faith:** Rather than acknowledge or cure the **confirmed** substantial defects or negotiate a lawful remedy, Defendants escalated the situation by retaliating and threatening immediate eviction, fabricating baseless fraud allegations, and demanding that Plaintiff vacate the premises "immediately" — all while retaining her full **$2,500** security deposit and having accepted **full July rent.**

30. On July 14, 2025, Defendants, through counsel, issued a retaliatory cease-and-desist letter (attached as *Exhibit H*) in response to Plaintiff's Verified Affidavit and Demand for Remedy. Rather than engage in dialogue, they falsely accused Plaintiff of fraud, misrepresentation, and identity concealment, and demanded immediate vacancy. This letter demonstrates Defendants' intent to intimidate, retaliate, and punish Plaintiff for asserting her rights under Texas Property Code §§ 92.052 and 92.331.

31. **This conduct is retaliatory and unlawful under:**
    - **Texas Property Code § 92.331** (Retaliation for repair demand or good faith complaint);
    - **Texas Property Code § 92.334** (False reports of tenant misconduct);
    - **Federal Fair Housing Act**, 42 U.S.C. §§ 3601–3619 (Retaliation based on protected activity).

32.Plaintiff/Injured Party and her children have suffered severe mental anguish, housing instability, emotional distress, and commercial injury.

33. Defendants' actions have aggravated the original harm and placed Plaintiff under threat of unlawful dispossession despite her legal occupancy and standing under the lease.

34. **Reliance and Human Impact from Misrepresentations:** Plaintiff relocated across the country—from California to Texas—with her minor children in reliance on Defendants' express and implied representations that the premises were habitable, safe, and move-in ready. This relocation involved considerable logistical and financial effort, including the transport of belongings, housing transition, and enrollment in local services. Within hours of arrival, however, Plaintiff encountered multiple serious defects, including non-functioning HVAC, inoperable garage doors, broken fixtures, and unsanitary conditions—none of which were disclosed or discoverable via the pre-lease FaceTime video walkthrough. The emotional and practical impact of this deceit was profound: Plaintiff's minor child's 4th birthday, meant to mark a joyful milestone, was instead overshadowed by the need to schedule emergency repairs, meet garage technicians, handymen, and HVAC personnel, and triage unsafe conditions—all while attempting to settle into a new environment. Defendants' actions not only breached the lease, but directly disrupted family life and inflicted psychological and emotional harm at a time of intended celebration and stability.

## V. CAUSES OF ACTION

## COUNT I – Breach of Contract

**(Texas Common Law; Against Defendants George Nowicki and Scott McClung, Jointly and Severally)**

35. Plaintiff reasserts and incorporates by reference all prior allegations as though fully set forth herein.

36.On or about June 19, 2025, Plaintiff lawfully entered into a written contract lease agreement with Defendants George Nowicki and Scott McClung, who jointly acted as landlords and out-of-state owners of the premises located at 509 Chapel Bend, New Braunfels, Texas.

37.Defendants expressly and impliedly warranted through verbal representations, written communications, and the terms of the lease that the leased property would be safe, clean, habitable, and "move-in ready."

38.In exchange for these promises, Plaintiff tendered full payment for the first month's rent and security deposit totaling $5,000.00 USD, took possession of the home in good faith, and remained in full compliance with the lease terms.

39.Upon taking possession, Plaintiff discovered that Defendants had **materially breached** the lease agreement by failing to deliver the premises in a condition even minimally compliant with Texas habitability standards or with the basic contractual expectations of a residential lease.

40.Within the first 12–24 hours, Plaintiff documented more than a dozen serious habitability defects—including nonfunctional HVAC, obstructed plumbing, broken appliances, dangerous obstructions, and unsanitary conditions—proving that Defendants' representations were false at the time they were made.

41.Defendants' conduct constitutes **a willful breach of contract**, including but not limited to:

- Breach of the duty to deliver the premises in a habitable condition;
- Breach of the covenant of quiet enjoyment;
- Breach of express and implied representations regarding safety, cleanliness, and readiness;
- Breach by omission through failure to disclose known latent defects;

- Breach by retaliation when Plaintiff demanded performance or lawful remedy.

42.Plaintiff performed all of her obligations under the lease, including payment and cooperation, yet was denied the essential benefit of her bargain—namely, the safe and peaceful occupancy of a habitable home.

43.Texas law recognizes a cause of action for breach of residential lease agreements and entitles the aggrieved tenant to recover both direct and consequential damages, including loss of use, emotional distress caused by the breach, moving costs, out-of-pocket repairs, and diminution in value.

44.Defendants' breach is further aggravated by bad faith conduct, retaliatory threats, and unjust enrichment—having accepted rent and security deposits while delivering a product that was materially defective and unsafe.

45.Plaintiff served a **Verified Affidavit and Demand for Cure** (See **Exhibit A** attached hereto) on July 11, 2025, giving Defendants an opportunity to repair and cure the breach. Defendants ignored the offer, refused to cure the violations, and escalated their **retaliation** by issuing an unlawful notice to vacate.

46.As a direct and proximate result of Defendants' breach of contract, Plaintiff and her children suffered:

- Loss of safe and functional housing;
- Emotional distress and mental anguish;
- Out-of-pocket expenses for cleaning, repairs, and health-related consequences;
- Instability and disruption to family life and work;
- The loss of use and enjoyment of the leased premises.

47.Plaintiff is entitled to recover **compensatory damages, consequential damages, incidental losses, mental anguish damages, attorney's fees,** fee

shifting, costs, and all other remedies available at law or in equity for breach of contract under Texas law.

## COUNT II – Constructive Fraud and Fraudulent Inducement

## (Against Defendants George Nowicki and Scott McClung, jointly and severally)

48.Plaintiff reasserts and incorporates by reference all prior allegations as though fully set forth herein

49.Prior to execution of the lease, Defendants affirmatively represented—both verbally and through prior marketing materials—that the subject premises located at 509 Chapel Bend, New Braunfels, Texas, were clean, habitable, and "move-in ready." These representations were material and intended to induce reliance.

50.Defendants provided Plaintiff with photographs taken more than one year before the transaction and arranged a FaceTime video walkthrough purporting to reflect the current state of the premises. However, the video failed to reveal, and could not reasonably have revealed, numerous concealed or non-obvious material defects. These included, but were not limited to:

- A non-functional air conditioning unit;
- Inoperable garage doors and safety obstructions;
- A broken kitchen drawer that fell and caused physical injury;
- Non-draining bathtub and disconnected sink stoppers;
- An unusable microwave with a door that would not open;
- Structural instability, water flow issues, and electrical deficiencies;
- Unclean and unsanitary conditions such as brown-stained toilets.

51.These defects were not visible, audible, or otherwise reasonably discoverable during the virtual video walkthrough. The inherent limitations of

FaceTime prevented any realistic inspection of mechanical systems, plumbing functionality, cabinet stability, security features, or garage operation.

**52.Critically, Plaintiff relied upon these representations in making the decision to relocate across the country—from California to Texas—with her minor children, incurring substantial time, expense, and logistical burden. Defendants were fully aware of the interstate nature of the move and the degree of reliance Plaintiff was placing on their statements.**

53.Defendants possessed exclusive and superior knowledge of the property's deteriorated condition and concealed numerous known, material defects that they had a duty to disclose under both law and equity. At no point did they warn Plaintiff or offer truthful disclaimers as to the property's habitability or repair needs.

54.Instead, they knowingly withheld material information with the intent to induce Plaintiff to sign the lease and take possession under false pretenses, exploiting her reliance and geographic vulnerability.

55.Plaintiff justifiably relied upon Defendants' express and implied representations, and had no opportunity to verify or discover the concealed conditions prior to arrival and possession. Defendants provided no meaningful warning, no repair list, and no contemporaneous photos accurately depicting the property's true condition.

56.Defendants' conduct constitutes **constructive fraud**—a breach of duty arising from a position of trust and superior knowledge—and **fraudulent inducement**, as they obtained contractual agreement through misrepresentation and concealment of material facts.

57.As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff suffered economic losses, emotional trauma, disruption of family life,

and substantial out-of-pocket costs associated with travel, temporary housing disruption, mitigation efforts, and property repairs.

58.Plaintiff asserts this claim under Texas common law, which recognizes and provides a private right of action for fraudulent inducement and constructive fraud. Defendants' conduct was intentional, malicious, and egregious, and warrants full compensatory, equitable, and punitive damages as authorized by law.

## COUNT III – Breach of the Implied Warranty of Habitability

## (Against Defendants George Nowicki and Scott McClung, jointly and severally)

## (Tex. Prop. Code §§ 92.052, 92.056, 92.0563)

59.Plaintiff reasserts and incorporates all prior allegations as if fully stated herein.

60.Under Texas Property Code §§ 92.052 and 92.056, residential landlords have a statutory and non-waivable duty to maintain leased premises in a condition that is habitable, safe, and compliant with applicable health and building codes. This includes timely remedying any condition that materially affects the physical health or safety of an ordinary tenant.

61.At the time of delivery, Defendants jointly failed to meet this obligation and knowingly delivered the property in a condition that was materially unsafe, unsanitary, and in direct violation of state habitability standards.

62.Conditions materially affecting health and safety included, without limitation:

- A non-functional HVAC system amid Texas summer heat;
- Obstructed or faulty plumbing fixtures, including sinks and bathtubs that failed to drain;
- Dozens of large and small wall holes exposing structural defects;

- Unusable appliances (e.g., a microwave with a non-opening door);
- Missing or broken security equipment (inaccessible Ring system and absent doorbell);
- Inoperable garage doors and obstructions posing safety risks;
- Visibly stained toilets, broken cabinetry, and general uncleanliness throughout the premises;
- Electrical hazards including exposed wiring, non-functioning lights, and missing bulbs.

63.These defects were either (a) known to Defendants prior to delivery and concealed, or (b) brought to Defendants' attention ***immediately*** upon move-in with photographic evidence and written notice—and yet were left unremedied or only partially addressed.

64.Defendants were given both formal notice and reasonable opportunity to cure these violations, as required under Texas law, including by way of a formal **verified** affidavit and demand served on July 11, 2025. Nonetheless, Defendants failed or refused to resolve the defects in a timely or sufficient manner.

65.Defendants' inaction constitutes a continuing breach of the implied warranty of habitability, codified under Texas Property Code §§ 92.052 and 92.056, and enforceable by private right of action under § 92.0563.

66.As a direct and proximate result of this breach, Plaintiff and her minor children suffered economic loss, loss of use and enjoyment of the premises, mental anguish, emotional distress, and incurred unnecessary out-of-pocket expenses and physical hardship.

67.Plaintiff is entitled to recover actual damages, statutory relief, equitable remedies, and attorney's fees as provided by Texas law, including under Texas Property Code §§ 92.0563 and 92.109.

## COUNT IV – Constructive Eviction

**(Against Defendants George Nowicki and Scott McClung, jointly and severally)**

68.Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

69. At all times relevant, Plaintiff lawfully occupied the subject premises at 509 Chapel Bend, New Braunfels, Texas, under a binding residential lease agreement entered in good faith. Said lease, whether oral or written, carried with it legal and equitable guarantees of quiet enjoyment, safety, and habitability under Texas law and general principles of contract and property law.

70.Defendants George Nowicki and Scott McClung, acting jointly, knowingly, and in concert, breached these fundamental obligations by delivering and maintaining the premises in a materially defective, dangerous, and uninhabitable condition. These conditions included, but were not limited to:

- A non-functioning air conditioning system during Texas summer heat;
- Defective plumbing, including a non-draining tub and broken sink stopper;
- Inoperable and obstructed garages, presenting safety and fire hazards;
- Unclean and unsanitary bathrooms with visible human waste;
- Dozens of unrepaired wall holes and exposed hardware;
- A broken kitchen drawer that caused physical injury;
- Pest infestations (ants) in food preparation areas;
- Lack of basic safety features including a working doorbell and functioning smoke detectors.

71.These conditions were not disclosed prior to execution of the lease, were not reasonably discoverable by Plaintiff through the limited pre-lease visual

inspection or virtual video walkthrough, and directly undermined the core purpose and benefit of the tenancy.

72. Plaintiff immediately notified Defendants of these substantial violations, and provided an opportunity to cure via verbal communication, text, email, and a formal *Verified Affidavit and Commercial Offer* (**Exhibit A**) served on July 11, 2025. Defendants failed to cure or offer remedy in good faith, instead escalating the matter through retaliatory threats of eviction and fabricated accusations, while continuing to retain Plaintiff's full July rent of $2,500 and her $2,500 security deposit.

73. As a direct result, Plaintiff and her minor children were deprived of the essential use and enjoyment of the home. She was unable to unpack, settle, or safely reside in the space, and was placed under economic, psychological, and legal duress. Defendants' knowing, coordinated misconduct forced Plaintiff to endure untenable housing instability, emotional distress, and physical risk—thereby **constructively evicting** her as a matter of law.

74. Under Texas law, a constructive eviction arises when a landlord's acts or omissions materially impair a tenant's ability to enjoy the premises, and the tenant is compelled to vacate or is deprived of meaningful occupancy. The standard for constructive eviction has been met and exceeded in this case.

75. Plaintiff asserts a **private right of action for constructive eviction** under Texas common law and tenant protections, and seeks the following:

- **Compensatory damages** for lost value, relocation hardship, and emotional distress;
- **Treble damages** where permitted due to retaliatory misconduct;
- **Restitution and rescission** of the lease contract;
- **Equitable relief**, including injunction and declaratory judgment;
- **Attorney's fees and costs** under applicable law;

- Any and all other relief the Court deems just and appropriate in law, equity, or commerce.

## COUNT V – Retaliation in Violation of Tenant Rights

**(Tex. Prop. Code §§ 92.331–92.334; Against Defendants George Nowicki and Scott McClung, jointly and severally)**

76.Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

77.Plaintiff, acting in **good faith** and in full compliance with Texas Property Code §§ 92.052 and 92.056, lawfully submitted written notice of serious and materially dangerous habitability violations to Defendants, supported by **photographic evidence,** detailed descriptions, and a formal demand for remedy and fair settlement.

78.Rather than acknowledge the obvious and confirmed defects—including inoperable HVAC, non-draining plumbing, extensive physical damage to the premises, and other violations—Defendants issued a retaliatory Notice to vacate immediately, baselessly accusing Plaintiff of fraud and threatening legal action.

79.These threats were made immediately after Plaintiff/Injured Party exercised her legal right to request reasonable concessions for **unequivocally and undisputedly** uninhabitable living conditions and were intended to intimidate, coerce, and punish her for asserting protected tenant rights under the Texas Property Code.

80.Plaintiff's communications, complaints, and settlement proposal were **protected activities** under Texas Property Code §§ 92.056, 92.331, and 92.333, and her attempt to obtain habitable conditions and seek non-litigious resolution is explicitly shielded from retaliatory conduct under Texas law.

81.Defendants' actions—including malicious threats of eviction, cessation of promised repairs, false allegations of fraud, and refusal to engage in good faith—

constitute classic retaliatory tactics under Texas Property Code § 92.331 et seq., and directly violate §§ 92.331 through 92.334.

82.Defendants acted knowingly, jointly, and with retaliatory intent, weaponizing the eviction process as a tool of reprisal and bad faith rather than lawful enforcement.

83.Texas law prohibits such retaliatory conduct and provides for a **private right of action**, allowing tenants to recover:

- At least one month's rent plus $500 in statutory damages,
- Actual damages,
- Injunctive and declaratory relief, and
- Reasonable attorney's fees,
  as stated in Texas Property Code § 92.333, and
- Fee shifting

84.Plaintiff seeks all available statutory remedies under the law, as well as permanent injunctive relief to bar any eviction actions or related retaliation arising from Plaintiff's exercise of protected tenant rights.

## COUNT VI – Violation of the Texas Deceptive Trade Practices Act (DTPA)

**(Tex. Bus. & Com. Code §§ 17.41 et seq.; Against Defendants George Nowicki and Scott McClung, jointly and severally)**

85.Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

86.Plaintiff is a **"consumer"** within the meaning of the Texas Deceptive Trade Practices–Consumer Protection Act (Tex. Bus. & Com. Code § 17.45(4)), having leased the subject residential property for personal, family, and household use.

87.Defendants George Nowicki and Scott McClung are **"persons" engaged in trade or commerce** within the meaning of § 17.45(3), having offered, advertised, leased, and transacted in real property and residential rental services for

monetary consideration. In doing so, Defendants are directly subject to all obligations, liabilities, and remedies imposed under the DTPA.

88. Defendants **violated the DTPA, Tex. Bus. & Com. Code §§ 17.46(b)(5), (7), (24), and 17.50(a)(1), (3)** by engaging in multiple false, misleading, and deceptive acts and practices, including but not limited to:

- Knowingly misrepresenting that the leased premises were clean, habitable, safe, and "move-in ready";
- Concealing known material defects—such as non-functioning air conditioning, dangerous garage obstructions, faulty plumbing, and hazardous conditions—that were not visually apparent in photos or during a limited video tour;
- Using **outdated or misleading visual representations** to falsely induce Plaintiff's reliance and acceptance;
- Failing to disclose conditions known to Defendants that would have deterred a reasonable consumer from entering the lease;
- Representing that the property had characteristics, uses, or benefits which it did not possess;
- Making express and implied warranties which were **breached immediately upon occupancy**, including habitability, safety, and quiet enjoyment.

89. These acts and omissions were a **producing cause** of Plaintiff's actual damages, including but not limited to: financial loss, out-of-pocket costs, emotional distress, unsafe housing conditions, relocation hardship, repair-related burdens, and the commercial injury of paying for materially defective services never delivered.

90.Defendants' deceptive conduct was knowing, intentional, and grossly indifferent to Plaintiff's rights and safety, entitling Plaintiff to exemplary and treble damages under Tex. Bus. & Com. Code § 17.50(b)(1).

91.Defendants further failed to make a **bona fide offer of settlement** or cure under § 17.505, and their failure to respond to Plaintiff's verified affidavit and commercial offer further constitutes bad faith and waiver of statutory defenses.

92.Accordingly, Plaintiff asserts this **private right of action** under Tex. Bus. & Com. Code § 17.50 and seeks the following relief:

- **Actual damages**, including economic loss, costs of mitigation, and consequential damages;
- **Treble damages** due to knowing and intentional misconduct;
- **Equitable and injunctive relief** as necessary to prevent future violations;
- **Attorney's fees, court costs, and expenses** as authorized by Tex. Bus. & Com. Code § 17.50(d);
- Any further relief, legal or equitable, as the Court deems just and proper.

## COUNT VII – Negligence and Gross Negligence

## (Against Defendants George Nowicki and Scott McClung, jointly and severally)

93.Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

94.Defendants George Nowicki and Scott McClung, acting as landlords, property owners, and persons in direct control of the leased premises, owed Plaintiff and her minor children a **non-delegable legal duty** to maintain the subject property in a condition that was **reasonably safe, sanitary, and fit for residential habitation**, as required by Texas common law, Texas Property Code § 92.052, and the implied covenant of quiet enjoyment.

95.Defendants breached that duty repeatedly and egregiously by failing to repair, mitigate, or warn Plaintiff of numerous **dangerous, defective, and unsanitary conditions**—including but not limited to:

- Exposed nails and broken hardware in a kitchen drawer that fell and struck Plaintiff's foot within 24 hours of move-in, causing bruising and physical injury;
- Widespread pest infestation, including ants throughout the kitchen;
- Bathrooms delivered in unsanitary and unhygienic condition, with feces-stained toilet seats;
- Inoperable garage doors and obstructed access areas posing safety risks;
- Structurally unsound and deteriorating fencing in the backyard;
- Inaccessible or malfunctioning safety/security devices, such as the doorbell and Ring camera;
- Defective plumbing and drainage hazards that remain unrepaired.

96.Defendants were placed on **immediate written and verbal notice** of these conditions on multiple occasions, had ample time and opportunity to remedy them, and **failed or refused to take prompt, reasonable, or complete corrective action**. This constitutes not only actionable negligence, but **gross negligence**—defined under Texas law as **conscious indifference to the rights, safety, or welfare of others.**

97.Defendants' pattern of conscious inaction, bad faith responses, and retaliatory threats of eviction reflect a **reckless and willful disregard** for Plaintiff's safety, mental health, and tenancy rights—particularly where minor children were present and clearly placed at risk. Despite being aware of the hazards, Defendants chose to ignore them, **escalate the conflict**, and **punish Plaintiff** for making lawful repair demands.

98.Plaintiff asserts a private right of action for negligence and gross negligence under Texas tort law, and seeks the following remedies:

- **Compensatory damages** for personal injury, pain and suffering, property loss, medical or alternative housing costs, and emotional distress;
- **Exemplary and punitive damages** under Texas Civil Practice and Remedies Code § 41.003(a), based on Defendants' gross negligence and willful disregard of known risks;
- **Equitable relief** to prevent further retaliation or abuse;
- Any **additional relief** deemed just and proper under law and equity.

99.Defendants' conduct was not only negligent, it was **morally reprehensible**—placing Plaintiff and her children in direct harm's way and **weaponizing inaction** as a tool of punishment. Their deliberate indifference to known safety hazards renders them fully liable in law, equity, and conscience.

**COUNT VIII – Unjust Enrichment**

**(Against Defendants George Nowicki and Scott McClung, jointly and severally)**

100.Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

101.Defendants George Nowicki and Scott McClung have knowingly and wrongfully retained substantial financial benefits—including, but not limited to, the full July 2025 rent payment of $2,500.00 and a $2,500.00 security deposit—despite delivering a property that was materially uninhabitable, unsafe, unsanitary, and unfit for lawful residential occupancy.

102.Defendants accepted Plaintiff's funds in full prior to move-in while concealing critical habitability defects, including non-functioning HVAC, unsafe structural features, plumbing issues, and unsanitary conditions. These defects

were material, known, and not reasonably discoverable through the limited pre-lease video call conducted by Plaintiff.

103.After being placed on notice of more than a dozen hazardous and habitability-violating conditions, Defendants refused to offer any refund, rent abatement, or reasonable concession. Instead of making good faith efforts to cure or compensate, Defendants chose to double down on their misconduct.

104.**Not only are Defendants attempting to retain every dollar paid**, but they have gone a step further and **demanded that Plaintiff immediately vacate the premises—despite full payment having been made and no lawful basis for early termination.** Defendants' threat to unlawfully dispossess Plaintiff, while simultaneously retaining rent and deposit funds, reflects a calculated attempt to inflict economic coercion and unlawfully profit from their own breaches.

105.Defendants' conduct is not only unethical, but a textbook example of **unjust enrichment** under Texas common law: the wrongful retention of benefits obtained through fraud, misrepresentation, and bad faith—at the direct expense of an injured party.

106.**Plaintiff asserts a private right of action** for unjust enrichment and demands the following relief:

- **Full restitution** of all rent and deposits paid for any period in which Defendants failed to provide a habitable dwelling, including July 2025;
- **Disgorgement** of all ill-gotten financial gain derived from the lease agreement and Plaintiff's reliance;
- **Equitable remedies**, including declaratory and injunctive relief barring any further attempts to unlawfully evict or financially exploit Plaintiff;
- **Any further relief** this Court deems just, proper, and necessary to prevent continuing abuse and restore fairness to the landlord-tenant relationship.

107.To allow Defendants to retain Plaintiff's funds while denying her the basic right to possession of the premises for the time paid—especially under conditions they materially misrepresented—would be to reward fraud, breach, and retaliatory abuse. **Equity, law, and conscience demand full restitution and immediate judicial intervention.**

## COUNT IX – Intentional Infliction of Emotional Distress

**(Common Law Tort; Against Defendants George Nowicki and Scott McClung, jointly and severally)**

108.Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully stated herein.

109.Defendants George Nowicki and Scott McClung, acting jointly and in concert, knowingly and willfully subjected Plaintiff and her minor children to degrading, hazardous, and emotionally destabilizing living conditions after fraudulently inducing her to sign a lease for a residence that was unfit for human habitation. These acts were intentional, not accidental, and executed with conscious disregard for Plaintiff's dignity, emotional wellbeing, and basic tenant rights.

110.Despite Plaintiff's immediate and good faith notification of over a dozen urgent habitability violations—most of which were verified, partially repaired, or acknowledged by Defendants themselves—Defendants refused to provide any material remedy, concession, or apology. Instead, they responded with hostility, **false allegations of fraud**, and a retaliatory notice to vacate ***immediately***, **threatening to forcibly remove** Plaintiff and her children from their home less than two weeks after moving across the country.

111.This malicious escalation—delivered without cause or justification—was plainly intended to intimidate, silence, and punish Plaintiff for asserting her legal rights. Defendants' actions inflicted **extreme psychological pressure**, housing

insecurity, and emotional chaos at a time when Plaintiff and her young children were most vulnerable.

112.As a result of Defendants' outrageous misconduct, Plaintiff has suffered **severe and diagnosable emotional distress**, including but not limited to: insomnia, recurring migraines, panic episodes, crying spells, hypervigilance, chest pain, elevated cortisol levels, and an inability to focus or perform professional duties. Her children, observing this chaos and instability, have become **emotionally disoriented, fearful, and distressed**, repeatedly asking why they cannot unpack, whether they must leave again, and whether they are safe in their home—questions no child should be forced to ask because of a landlord's willful cruelty and bad faith.

113.This conduct was **not merely negligent or insensitive—it was calculated, extreme, and shocking to the conscience**. No reasonable member of a civilized society would expect a mother and her children to endure such retaliation and emotional torment merely for requesting working plumbing, safe garages, clean bathrooms, and functioning air conditioning in July in Texas.

114.Under Texas common law, a defendant is liable for intentional infliction of emotional distress when their conduct is so extreme and outrageous as to exceed all bounds of decency, and when it intentionally or recklessly causes severe emotional harm. Defendants' sustained pattern of gaslighting, threats, and hostile silence—combined with their refusal to resolve a verified complaint involving health and safety risks—meets and exceeds this legal threshold.

115.Plaintiff therefore demands:

- **Compensatory damages** for emotional anguish, trauma, disruption of family life, and injury to mental health;
- **Punitive damages** to punish Defendants' malicious conduct and deter similar abuses by landlords acting in bad faith;

- **Equitable relief and public record** of Defendants' misconduct;
- All further relief the Court deems just and proper under law and equity.

116.Defendants' conduct, in its totality, reflects **willful, retaliatory cruelty** and a complete abdication of ethical and legal obligations—warranting the highest levels of civil penalty and punitive accountability.

**COUNT X – Declaratory and Injunctive Relief**

**(28 U.S.C. §§ 2201–2202; Against Defendants George Nowicki and Scott McClung, Jointly and Severally)**

117.Plaintiff realleges and incorporates by reference all prior allegations as though fully set forth herein.

118.An actual, justiciable controversy exists between Plaintiff and Defendants concerning the legal and equitable rights and obligations arising from the residential lease agreement, Defendants' repeated breaches, and Defendants' retaliatory threats of eviction in direct response to Plaintiff's exercise of protected rights.

119.Defendants have falsely accused Plaintiff of fraud, misrepresentation, and lease violations—without factual basis—solely to avoid liability for confirmed habitability violations and to punish Plaintiff for asserting her rights under Texas Property Code §§ 92.052, 92.056, and 92.331–.334.

120.Plaintiff has fully complied with her lease obligations, paid all rent due, and remained cooperative in the face of repeated breaches, documented unsafe conditions, and escalating retaliatory conduct.

121.Despite this, Defendants have issued an unlawful notice to vacate "***immediately***," threatened to initiate malicious and fraudulent eviction proceedings, and signaled their intent to retain Plaintiff's full security deposit—based on **unequivocally fabricated** "breach" allegations that are pretextual and in **bad faith.**

122. These facts give rise to immediate and **irreparable harm** unless judicial relief is granted.

123. Accordingly, Plaintiff seeks declaratory judgment pursuant to 28 U.S.C. § 2201 affirming that:

a. Defendants materially breached the lease agreement by failing to deliver a habitable residence;

b. Plaintiff is not in breach of the lease and has maintained good-faith performance under the contract;

c. Defendants' eviction threats and false allegations are retaliatory, unlawful, and unenforceable under Texas law.

124. Plaintiff also seeks preliminary and permanent injunctive relief pursuant to 28 U.S.C. § 2202, enjoining Defendants from:

a. Initiating or pursuing eviction proceedings based on false or retaliatory grounds;

b. Reporting false or defamatory information to any third party, including credit bureaus, leasing agencies, or governmental bodies;

c. Continuing any pattern of harassment, coercion, or interference with Plaintiff's peaceful possession of the premises.

125. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, provides a **private right of action** for prospective equitable relief to resolve legal uncertainty and prevent ongoing harm. The present controversy is real, immediate, and ripe for adjudication.

126. Without prompt judicial intervention, Plaintiff/Injured Party faces **irreparable injury to her housing stability, creditworthiness, family security, and legal standing**—all of which fall squarely within the protections afforded by federal equity and contract law.

## VI. PLAINTIFF REMAINS OPEN TO SETTLEMENT DESPITE DEFENDANTS' BAD FAITH

127.Plaintiff has at all times remained open to good-faith settlement, non-adversarial resolution, and meaningful dialogue regarding the substantial and undisputed defects in the leased premises. Plaintiff made clear her willingness to negotiate reasonable concessions and proposed specific remedies in writing, including through a Verified Affidavit (See attached Exhibit A) and Commercial Offer served on July 11, 2025. Despite this, Defendants have failed to offer any form of resolution, compromise, or counterproposal. Instead, they have responded exclusively with **retaliatory threats, unfounded accusations, and attempts to intimidate Plaintiff into vacating** the property without lawful basis. Defendants' refusal to engage in any form of remedial negotiation while simultaneously initiating retaliatory actions constitutes clear evidence of bad faith, malice, and commercial dishonor, further compounding Plaintiff's injuries and demonstrating the need for judicial intervention and equitable protection.

## VII. DEMAND FOR TRIAL BY JURY

128.Pursuant to the **Seventh Amendment to the United States Constitution** and **Federal Rule of Civil Procedure 38**, Plaintiffs hereby respectfully demand their right to a **trial by jury** on all claims and issues in this action that are so triable. Plaintiffs assert that material questions of fact exist, including—but not limited to—violations of federally protected rights, due process, and civil liberties by government actors acting under color of law. These are matters that must be decided by a jury of **the people**, as guaranteed by the Constitution and as a safeguard against governmental overreach, judicial misconduct, and ultra vires authority.

## VIII. TOTAL ENFORCEABLE VALUE CLAIMED TO DATE:

129.Pursuant to Texas law, federal jurisdiction under 28 U.S.C. § 1332(a), and unrebutted verified affidavits and commercial instruments served upon Defendants, Plaintiff asserts the following enforceable damages and remedies:

- **$132,250.00** in actual, itemized damages per Verified True Bill #070925-TX509 (See Exhibit B attached hereto);
- **$396,750.00** in **treble damages** under the Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code § 17.50(b)(1));
- **$75,000.00** in estimated attorney's fees, litigation costs, and administrative enforcement;
- **Additional compensatory, statutory, equitable, and punitive relief,** including but not limited to: statutory penalties, lien enforcement, emotional harm to minor children, and punitive damages for egregious and retaliatory conduct.

**TOTAL ESTIMATED VALUE IF LITIGATED: $703,750.00+,**
exclusive of continuing penalties, daily harm, and injunctive enforcement. (See Exhibit B attached hereto)

## IX. DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff and Injured Party **Donna Mortel** respectfully demands judgment in her favor and against **Defendants George Nowicki and Scott McClung,** jointly and severally, and requests that the Court award the following **legal, equitable, and commercial relief:**

### A. Declaratory and Injunctive Relief

1. **Declaratory Judgment** pursuant to 28 U.S.C. § 2201, affirming that:
   - Defendants materially breached the lease agreement and violated Texas statutory tenant protections;
   - Plaintiff has continuously acted in good faith and is not in breach;
   - All attempts to terminate the lease or force Plaintiff to vacate were retaliatory and void;

- The July 11, 2025 Verified Affidavit and True Bill #070925-TX509 are unrebutted, self-executing, and enforceable under applicable law and equity.

2. **Permanent Injunction** pursuant to 28 U.S.C. § 2202, enjoining Defendants and their agents from:

- Interfering with Plaintiff's lawful possession of the premises through June 30, 2026, unless and until lawful termination occurs through judicial process;
- Initiating any eviction, retaliation, or coercive actions based on pretext or fabricated breaches;
- Reporting false claims to credit bureaus, landlords, or government agencies;
- Withholding Plaintiff's security deposit, or refusing rightful compensation for verified damages;
- Engaging in further acts of harassment, retaliation, or intimidation.

**B. Monetary and Equitable Relief**

**3. Actual Damages and Commercial Enforcement**

- Enforce **True Bill #070925-TX509** in the amount of **$132,250.00** for breach of lease, habitability violations, constructive eviction, relocation harm, and related injuries;
- Award **treble damages** pursuant to Tex. Bus. & Com. Code § 17.50(b)(1), totaling **$396,750.00**, for knowing and intentional violations of the DTPA.

**4. Statutory Penalties and Compensatory Relief**

- Security deposit recovery and penalties: **$2,500.00** + statutory penalties;
- Habitability statute violations under Tex. Prop. Code § 92.0563: up to **$5,000.00**;
- Emotional distress (Plaintiff and minor children): **up to $25,000.00**;

- Punitive damages for egregious misconduct and bad faith: **up to $100,000.00** or as the Court deems just.

**5. Attorneys' Fees and Litigation Costs**

- Legal and administrative enforcement costs: estimated **$75,000.00** under Tex. Prop. Code § 92.109 and UCC § 1-305(a).

**6. Equitable Lien Enforcement**

- Recognize and enforce Plaintiff's **perfected equitable lien and security interest** under the unrebutted Affidavit and self-executing contract, as a matter of equity and commercial law.

**C. Clarification of Possession Rights and Reservation of Election**

Plaintiff expressly **reserves the right to elect between:**

- Continued possession and enforcement of the lease through June 30, 2026; **or**
- Termination of tenancy and restitution for all relocation expenses, double rent paid, and future expectancy damages—**should Defendants' conduct render ongoing tenancy commercially impractical or psychologically untenable.**

This election shall be made **without waiving any claim** and shall be preserved pending Court review of damages, injunctive relief, and verified affidavit enforcement.

**D. Additional Relief**

**7. Any and all further relief—legal, equitable, declaratory, or commercial—that this Court deems just, necessary, and proper to:**

- Restore Plaintiff's position;
- Prevent future abuse;
- Remedy the wrongful enrichment and confirmed statutory violations by Defendants.

//

//

//

//

//

//

//

//

//

//

//

## VERIFICATION:

**Pursuant to 28 U.S.C. § 1746**

I, Donna: Mortel, over the age of 18, competent to testify, and having **firsthand knowledge** of the facts stated herein, do hereby **declare, certify, verify, affirm, and state** under penalty of perjury under the laws of the **United States of America and the State of Texas**, that the foregoing statements are **true, correct, and complete**, to the best of my **understanding, knowledge, and belief**, and made in **good faith**.

Executed, signed, and sealed this 15th day of July in the year of Our Lord two thousand and twenty five, *without* the United States, **with all rights reserved and without recourse and without prejudice.**

**All rights reserved without prejudice or recourse, UCC § 1-308, 3-402.**

By: Donna: Mortel ______________________

Donna: Mortel, *Real Party In Interest,*

*Plaintiff, Secured Party, Injured Party*